IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RONALD C. JESSE, JR.
and SHIRLEY A. JESSE, on behalf of
Nagel Lumber Company, Inc., Group
Medical, Prescription Drug, Dental and
Short Term Disability Plan,

                    OPINION AND ORDER

       Plaintiffs,

                    08-cv-400-bbc

   v.

NAGEL LUMBER COMPANY, INC.
and CATHY A. NORDINE,

       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this civil action for breaches of fiduciary duty under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001-1461, plaintiffs Ronald C. Jesse and Shirley A. Jesse, on behalf of Nagel Lumber Company, Inc. Group Medical, Prescription Drug, Dental and Short Term Disability Plan (the plan), have moved for class certification pursuant to Fed. R. Civ. P. 23(b)(1)(B) and (b)(2). Dkt. #24. The motion is unopposed.

Plaintiffs are participants and beneficiaries of the plan, which was sponsored, funded and administered by defendant Nagel Lumber Company, Inc. and run by defendant Cathy Nordine. Plaintiffs allege that defendants breached their fiduciary duty by failing to pay

1

covered medical claims incurred by plan participants, not properly funding the plan and concealing these facts from plan participants.

On December 5, 2008, I entered a partial default judgment against defendants, finding defendants jointly and severally liable for breach of their fiduciary duties to the plan pursuant to ERISA § 409, in amounts to be determined in subsequent proceedings. I found defendant Nagel liable to the plan for breach of its statutory obligation to fund the plan in an amount equal to the liabilities and damages that the plan incurred as a result of the breach. I ordered defendants removed as administrators of the plan, ordered the appointment of a receiver or trustee for the plan and estopped defendants from denying as covered and payable any claim falsely represented as "paid" on a explanation of benefits form sent to a plan participant. I also permitted plaintiffs to proceed with discovery in order to identify other affected plan participants and beneficiaries. Dkt. #9.

Plaintiffs now seek to represent a class of plan participants and beneficiaries and ask the court to approve a notice to potential class members. Dkt. ##24-25. Because plaintiffs have satisfied the class action requirements of Fed. R. Civ. P. 23, I am granting their motion for class certification and approving the proposed notice to class members, information form and publication notice.

From the complaint and affidavit submitted by plaintiff in support of class certification, I find the following facts to be undisputed for the purpose of deciding the motion for class certification.

FACTS

Plaintiffs Ronald Jesse, Jr. and Shirley Jesse are married and residents of Conover, Wisconsin. Ronald Jesse was a full-time employee of defendant Nagel Lumber Company, Inc., a Wisconsin corporation that sponsored, funded and administered the Nagel Lumber Company Group Medical, Prescription Drug, Dental and Short Term Disability Plan. Defendant Nagel established the plan as a self-funded health and welfare plan to provide health insurance benefits for its full-time employees and their dependents. Ronald Jesse was an employee-participant in the plan. Shirley Jesse and the couple's daughter were covered dependents under the plan. Defendant Cathy Nordine is a resident of Michigan and has served as the secretary and treasurer for defendant Nagel Lumber Company.

Defendant Nagel contracted with Claim Management Services, Inc. (CMS) to serve as the plan's third-party administrator. Nagel retained exclusive final authority to construe and apply the plan's provisions, including discretionary authority to direct CMS to deny or pay claims. Nagel designated Nordine to handle and oversee day-to-day dealings with CMS and the plan and to exercise discretion in doing so. Under the terms of the plan, CMS

3

processed benefit checks, drawn on bank accounts funded by Nagel and issued the checks directly to the participants' health care providers for payment of claims. At the same time that it mailed a check to a provider, CMS mailed a matching explanation of benefits form to the employee.

Because defendants were experience financial difficulties, they periodically instructed CMS to hold checks made payable to providers until defendant Nagel was able to amass sufficient funds to cover them. CMS was unwilling to do so. Instead, it sent the checks to defendants for disbursement to the providers, along with the matching check registers. Even when it sent a check back to defendants for disbursement because of insufficient funds, CMS still sent the matching explanation of benefits form to the employee, representing that the check had been paid to the provider on the date shown in the amount indicated. Nothing on the form disclosed that the check had been sent to defendants rather than to the provider. All of this occurred under defendants' actual and apparent authority.

Between July 1 and December 31, 2002, Shirley Jesse and the Jesses' daughter incurred covered medical expenses in the total amount of $16,415.04. The providers submitted claims to CMS for payment under the plan. CMS prepared checks totaling $14,477.11 for payment to the Jesses' providers but forwarded the checks to defendants for disbursement rather than to the providers. At the same time, CMS mailed explanation of benefit forms to Ronald Jesse, stating that the checks had been paid to the providers.

4

However, defendants never placed funds in the bank accounts to cover the checks or sent the checks to the providers in payment of these claims. On January 1, 2003, CMS withdrew as third-party administrator of the plan. Dkt. #1.

Pursuant to plaintiffs' discovery request, CMS produced copies of 14 transmittal letters that it sent to defendants between July and December 2002 on behalf of 194 plan participants. With each transmittal letter, CMS had forwarded checks to defendants that it had prepared for claim payments that defendants were to disburse to the appropriate provider. CMS also provided spreadsheets to plaintiffs on which it identified the following with respect to each payment forwarded to defendants for future disbursement: the plan participant's name and address, the provider's name, the date of service, the amount charged, the amount purportedly paid to the provider and the purported date of payment. Dkt. #28.

## DISCUSSION

### A. Class Certification

Because an individual cannot obtain personal relief in an ERISA suit to enforce fiduciary duties, Massachusetts Mutual Life Insurance Company v. Russell, 473 U.S. 134, 140 (1985) (recovery for fiduciary violations must benefit plan as a whole), some courts have required these claims to be brought derivatively or as a class action, e.g., Coan v.

Kaufman, 457 F.3d 250, 261 (2d Cir. 2006) (class action proper means of acting in representative capacity under act). However, the Court of Appeals for the Seventh Circuit disagrees with this mandatory approach, reasoning that § 502(a) specifically authorizes individual suits against plan fiduciaries. Waldron v. Dugan, 2007 WL 4365358, *6 (N.D. Ill. Dec. 13, 2007) (citing Thornton v. Evans, 692 F.2d 1064, 1079-80 (7th Cir. 1983)). In this case, plaintiffs have opted to use the procedures set forth in Rule 23 to protect the interests of those whom they represent.

Before the court may certify a class under Rule 23, plaintiffs must satisfy the requirements of both Rule 23(a) and (b). Rosario v. Livaditis, 963 F.2d 1013, 1017 (7th Cir. 1992). Additionally, the court must make an initial assessment whether proposed class representatives have standing and whether the proposed class is "precise, objective and presently ascertainable," an implicit requirement in determining whether a class may be certified. Blihovde v. St. Croix County, 219 F.R.D. 607, 616 (W.D. Wis. 2003).

1. Ascertainability

Plaintiffs define the proposed class as follows:

Those Plan participants and beneficiaries who, between July 1, 2002 and December 31, 2002, received explanations of benefits (EOBs) from CMS which falsely stated that CMS was sending checks in payment for covered medical services directly to medical providers, when in fact CMS was forwarding all such checks to Nagel and Nordine for future "disbursement,"

>as a result of which actions such payments were never made to the providers by or on behalf of the Plan.

As plan participants and beneficiaries suing on behalf of the plan, plaintiffs have standing. The proposed class definition is clear and sufficiently limited to allow plan participants to determine whether they are members of the class. In fact, plaintiffs already have been able to identify those plan participants who were most likely affected by defendants' conduct.

2. Rule 23(a) prerequisites

Rule 23(a) sets forth four prerequisites: (1) numerosity, that "the class is so numerous that joinder of all members is impracticable"; (2) commonality, that "there are questions of law or fact common to the class"; (3) typicality, that "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) adequacy, that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Because plaintiffs have submitted evidence that the proposed class has 194 members, I am satisfied that the class is sufficiently numerous to make joinder impracticable. There are also common issues of law and fact. I have found that defendants breached their fiduciary duties to the plan and prevented the plan from paying participants' medical claims. Each of the proposed class members would be relying on the same general facts and asserting the same legal theory in seeking relief. Oshana v.

7

Coca-Cola Co., 472 F.3d 506, 514 (7th Cir. 2006). Plaintiffs' claims are typical of the class. The only factual differences between the potential class members' claims are the dates of service, the identity of the providers and patients, the amounts the providers billed the plan and the amounts CMS approved for payment under the plan. Otherwise, defendants handled the payments in the same manner. Finally, plaintiffs are adequate class representatives because their claims do not conflict with the claims of other proposed class members and, as discussed later in this opinion, proposed class counsel is competent. Amchem Products, Inc. v. Windsor, 521 U.S. 591, 625-26 (1997).

3. Type of action to be maintained

Next, plaintiffs must show that the proposed class action "may be maintained" as one of the four types of class actions permitted under Rule 23(b). Plaintiffs contend that Rule 23(b)(1)(B) and (b)(2) apply. I agree.

Rule 23(b)(1)(B) permits class actions in cases that involve "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." As plaintiffs point out, the Supreme Court has held that "actions charging 'a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class' of beneficiaries,

8

requiring an accounting or similar procedure 'to restore the subject of the trust'" are classic examples of Rule 23(b)(1)(B) class actions. Ortiz v. Fibreboard Corporation, 527 U.S. 815, 834 (1999) (citing Fed. Rule Civ. Proc. 23 Advisory Committee Note, 1966 amendment). "[T]the shared character of rights claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members." Id.

Rule 23(b)(2) permits class actions in which "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). As previously discussed, defendants acted on grounds generally applicable to the proposed class. The second requirement is satisfied as well. The injunctive and declaratory relief awarded to plaintiffs in the December 5, 2008 order applies to the plan as a whole.

Although actions such as this one ultimately seek monetary relief in the form of reimbursement and payment, this does not mean that the action cannot be maintained under Rule 23(b)(2). Even when the declaration sought is "merely a prelude to a request for damages," it does not bar certification of the class under Rule 23(b)(2) "[a]s long as the concrete follow-on relief that is envisaged if ordered . . . be the direct, anticipated

9

consequence of the declaration." Berger v. Xerox Corp. Retirement Income Guarantee Plan, 338 F.3d 755, 763-64 (7th Cir. 2003).

4. Appointment of class counsel

As a final matter, I must consider whether proposed class counsel, Jeffrey Sweetland, will preform adequately in light of his work in this case, experience in class action litigation, knowledge of ERISA and resources. Fed. R. Civ. P. 23(g)(1)(A). A review of the affidavit submitted by Sweetland satisfies me that he is more than competent to serve as class counsel in this case. He avers that he has years of experience litigating complex pension and employee benefit cases, including ERISA cases and class actions. Therefore, in compliance with Rule 23(g)(1), Jeffrey Sweetland will be appointed class counsel.

B. Notice to Class

Plaintiffs have submitted a proposed notice to send to potential class members, an information form for class members to complete and a notice that they seek to publish in the Vilas County News-Review, a local newspaper, once a week for four consecutive weeks. Having reviewed the proposed documents, I authorize plaintiffs under Rule 23(d)(1)(B) to send the attached notice and information form to the 194 individuals who fall within the class and to publish the proposed publication notice in the local newspaper once a week for

10

four consecutive weeks. Plaintiffs shall instruct potential class members to complete and return the information form to class counsel by September 30, 2009.

## ORDER

IT IS ORDERED that:

1. The motion filed by plaintiffs Ronald C. Jesse and Shirley A. Jesse, on behalf of Nagel Lumber Company, Inc. Group Medical, Prescription Drug, Dental and Short Term Disability Plan, for class certification under Fed. R. Civ. P. 23(b)(1)(B) and (b)(2), dkt. #24, is GRANTED.

2. The class is defined as follows:

> Those Plan participants and beneficiaries who, between July 1, 2002 and December 31, 2002, received explanations of benefits (EOBs) from CMS that stated falsely that CMS was sending checks in payment for covered medical services directly to medical providers, when in fact CMS was forwarding all such checks to Nagel and Nordine for future "disbursement," as a result of which actions such payments were never made to the providers by or on behalf of the Plan.

3. Plaintiffs' proposed notice, information form and newspaper publication notice, dkt. #25, are approved under Fed. R. Civ. P. 23(d)(1)(B). Plaintiffs shall instruct potential class members to complete and return the information form to class counsel by September 30, 2009.

4. Plaintiffs shall mail the attached notice and information form to the 194 plan participants constituting the class and certify such mailing to the court.

5. Plaintiffs shall publish the publication notice in the <u>Vilas County News-Review</u> once a week for four consecutive weeks and certify the fact of publication to the court.

6. In compliance with Fed. R. Civ. P. 23(g)(1), Jeffrey Sweetland will be appointed class counsel.

Entered this 21st day of July, 2009.

BY THE COURT:

*Barbara B. Crabb*

BARBARA B. CRABB
District Judge

12